UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

– against –

PHILLIP THOMPSON,

     *Defendant.*

**MEMORANDUM & ORDER**
25-cr-00253 (NCM)

---

**NATASHA C. MERLE**, United States District Judge:

  Before the Court is defendant Phillip Thompson's appeal of Magistrate Judge Taryn A. Merkl's October 29, 2025 Order continuing defendant's order of detention pending trial. For the reasons stated below, defendant's appeal is DENIED.

## BACKGROUND

  On August 11, 2025, the United States of America (the "Government") filed a three-count Indictment charging defendant and another individual with the armed carjacking of a car service driver. *See* Indictment, ECF No. 1. The Indictment charges defendant with: (1) carjacking in violation of 18 U.S.C. § 2119(1)–(2); (2) Hobbs Act Robbery in violation of 18 U.S.C. § 1951(a); and (3) Possessing and Brandishing a Firearm During a Crime of Violence in violation of 18 U.S.C. § 924(c)(1)(A)(i)-(ii). Indictment 1–2.[1]

  On September 5, 2025, defendant was arraigned before Magistrate Judge Joseph A. Marutollo. Defendant did not present a bail package, and Judge Marutollo ordered defendant detained. *See* Min. Entry for Criminal Proceeding, ECF No. 5; *see also* Order

---

[1]  Throughout this Order, page numbers for docket filings refer to the page numbers assigned in ECF filing headers.

1

of Detention Pending Trial, ECF No. 6. On October 29, 2025, Magistrate Judge Taryn A. Merkl held a bail hearing at which defendant proposed a bail package of a secured $100,000 bond with three cosigners and a home detention condition. *See* ECF Min. Entry for Criminal Proceeding, ECF No. 24; *see also* Tr. of Criminal Cause for Bail Appl. ("Bail Hr'g Tr.") 11:1–9, ECF No. 30-1. The Government opposed bail, citing the allegedly violent nature of defendant's offense—during which the Government claims that defendant hit the victim with a gun—as well as a second, similar, but uncharged carjacking incident in which the government alleges that defendant participated. Bail Hr'g Tr. 3:22–4:8, 4:25–5:9. At the hearing the Government also argued that defendant's criminal history and failure to appear at court in connection with that criminal history weighed in favor of detention. *See* Bail Hr'g Tr. 6:7–19. Judge Merkl ordered defendant's continued detention, reasoning that the "very recent, violent crime" with which the defendant was charged, along with his pattern of continuing to commit crimes even while on pretrial release in connection with his municipal court cases, favored detention. Bail Hr'g Tr. 22:2–23:17.

On December 15, 2025, defendant filed a letter requesting that the Court vacate the detention order and release him on bond. Mot. 1.[2] Defendant argues that his ties to the community and his family and his lack of prior criminal convictions weigh in favor of release. *See* Mot. 4. As directed, the Government filed a response to defendant's request two weeks later. *See* Opp'n. In opposition, the Government argues that defendant is a

---

[2] The Court hereinafter refers to defendant's letter dated January 15, 2025, ECF No. 30, as the "Motion"; the Government's letter dated December 30, 2025, ECF No. 31, as the "Opposition"; defendant's letter dated January 15, 2026, ECF No. 33, as the "Supplemental Authority Letter"; and the Government's letter dated January 21, 2026, ECF No. 35, as the "Supplemental Response."

2

flight risk and presents a danger to the community. Opp'n 5–6. The Court addressed defendant's application following a status conference on January 14, 2026. *See* ECF Min. Entry dated Jan. 14, 2026. At the hearing, defendant argued that other defendants facing similar charges in the Eastern District of New York have routinely been granted bail, including in cases where the statutory "presumption" in favor of detention under the Bail Reform Act applied. *See* Tr. of Criminal Cause for a Status Conference ("Appeal Tr.") 16:15–18, 17:19–22 (draft on file with Court). Defendant subsequently provided a supplemental authority letter listing purportedly analogous cases. *See* Suppl. Auth. Letter. In response, the government argues that defendant's cited cases are distinguishable, including because "defendant's list fails to appraise the Court of whether [the] purportedly analogous cases have the same relevant facts at issue here[,]" and none of defendant's "descriptions of purportedly analogous cases indicate that the defendants in those cases committed their crimes while already on pretrial release." Suppl. Resp. 1.

## LEGAL STANDARD

Pursuant to the Bail Reform Act, a defendant must be detained pending trial "if, after a hearing, the judge finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." *United States v. Mattis*, 963 F.3d 285, 290 (2d Cir. 2020) (quoting 18 U.S.C. § 3142(e)(1)).[3] Courts undertake a two-step inquiry when considering a bail application. First, a court must assess whether the Government has established that the defendant presents a danger to the community or a risk of flight. *United States v. Boustani*, 356 F. Supp. 3d 246, 251 (E.D.N.Y. 2019), *aff'd*, No. 19-344, 2019 WL 2070656

---

[3] Throughout this Order, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

3

(2d Cir. Mar. 7, 2019); *see also* 18 U.S.C. § 3142(e). A defendant poses a danger to the community "not only when they commit acts of violence, but also when it is likely they will commit non-violent acts that are detrimental to the community." *United States v. Maratea*, No. 18-cr-00337, 2018 WL 11191537, at *3 (E.D.N.Y. Nov. 20, 2018). The Government "must support a finding of dangerousness by clear and convincing evidence, and must support a finding of risk of flight by a preponderance of the evidence." *United States v. Bruno*, 89 F. Supp. 3d 425, 429 (E.D.N.Y. 2015) (first citing *United States v. Ferranti*, 66 F.3d 540, 542 (2d Cir. 1995); and then citing *United States v. Jackson*, 823 F.2d 4, 5 (2d Cir. 1987)).

Second, if the Government satisfies its burden, the Court must determine whether any condition or combination of conditions will reasonably assure that the defendant will not flee or pose a danger to the community, as well as determine whether the defendant "is unlikely to abide by any condition or combination of conditions of release." *United States v. Dali*, No. 25-cr-00014, 2025 WL 97658, at *4 (E.D.N.Y. Jan. 15, 2025); *see also United States v. Gotti*, 794 F.2d 773, 776 (2d Cir. 1986). In making this determination courts consider the factors set forth in 18 U.S.C. § 3142(g), including: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person in the community that would be posed by the person's release. *Id.*; *see also United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001).

Additionally, the Bail Reform Act enumerates certain offenses which give rise to a rebuttable presumption in favor of detention that no condition or combination of conditions "will reasonably assure the appearance of the person as required and the safety of any other person and the community." *Mercedes*, 254 F.3d at 436 (quoting 18 U.S.C.

§ 3142(e)). In a presumption case, a defendant "bears a limited burden of production . . . to rebut that presumption by coming forward with evidence that he does not pose a danger to the community or a risk of flight." *Id.* If a defendant meets this burden, "the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court." *Mattis*, 963 F.3d at 291. Still, even in a presumption case, the Government bears the ultimate burden of persuasion. *Id.* Finally, a district judge reviews a magistrate judge's bail determination de novo. *Borodin v. Ashcroft*, 136 F. Supp. 2d 125, 128 (E.D.N.Y. 2001).

## DISCUSSION

The Government argues that defendant should remain detained because clear and convincing evidence shows that he poses a danger to the community.[4] *See* Opp'n 1. For the reasons stated below, the Court agrees.

### I. Dangerousness to the Community

At the outset, the Court observes that because defendant is charged with violating 18 U.S.C. § 924(c), there is a presumption that no condition or combination of conditions will reasonably assure the safety of the community if defendant is released. *See* 18 U.S.C. § 3142(e)(3)(B). In addition, the Section 3142(g) factors weigh in favor of continued detention. The Court considers each of the factors in turn.

---

[4] In light of the Court's conclusion that no combination of conditions will reasonably assure the safety of the community if defendant is released, the Court does not address the parties' arguments about defendant's risk of flight. *See United States v. Zeitlin*, No. 23-cr-00419, 2023 WL 6162820, at *1 n.6 (S.D.N.Y. Sept. 21, 2023) ("Given that the [c]ourt determines that the government has met its burden of demonstrating that [the defendant] presents a serious risk of flight, it need not and does not now determine whether it also has met its burden of demonstrating that he presents a risk of danger to the community."); *see also United States v. Raniere*, No. 18-cr-00204, 2018 WL 6344202, at *4 n.9 (E.D.N.Y. Dec. 5, 2018).

5

### A. *Nature and Circumstances of the Offense*

According to the Government, defendant carjacked a car service driver by brandishing and "hit[ting] the driver with [a] gun," before getting into the car and driving away. Opp'n 2. The Indictment charges defendant with "knowingly and intentionally tak[ing] a motor vehicle" with the "intent to cause . . . serious bodily harm[.]" Indictment ¶ 1. The Government has emphasized defendant's role in the robbery, pointing out that he "was the one who possessed the gun[,]" and that he "was the one who hit the driver with the gun." Bail Hr'g Tr. 16:5–14; *see also* Opp'n 4–5 (explaining that defendant "did not just possess a gun, he also pointed the gun at the victim and hit the victim with the gun").

At the bail hearing, Judge Merkl found that defendant's "very recent, violent crime" weighed in favor of detention. Bail Hr'g Tr. 22:1–7. The Court agrees. Carrying out a carjacking while pointing, and hitting the victim with, a firearm constitutes a serious and violent offense. *See* 18 U.S.C. § 3156(a)(4) (defining "crime of violence" as "an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another"). Moreover, defendant concedes that the offense charged is serious and does not meaningfully dispute that this factor weighs in favor of continued detention. *See generally* Mot.; *see also* Appeal Tr. 16:8–11 (defense counsel stating that "[i]t's a serious case[,] . . . [i]t's a gunpoint robbery[,] [s]o I'm not going to stand in front of the Court and say it's not a serious case[,] [i]t is a serious case"). Accordingly, the Court finds that the nature and circumstances of defendant's alleged offense weigh in favor of detention. *See United States v. Parker*, 65 F. Supp. 3d 358, 364 (W.D.N.Y. 2014) ("The nature and circumstances of the offense charged support detention, since the crime with which [the] [d]efendant is charged is a crime of violence

6

as defined under the Bail Reform Act."); *see also United States v. Valdez*, 426 F. Supp. 2d 180, 183 (S.D.N.Y. 2006) ("Here, [the defendant] is charged with brandishing a firearm in order to carry out a robbery conspiracy . . . . Thus, this factor weighs in favor of detention.").

   B. *Weight of the Evidence*

Additionally, the weight of the evidence against defendant is strong. Defendant was captured on video carrying out a carjacking while armed. Opp'n 1–2. In addition to the video footage, the Government proffers evidence that defendant's cell phone was later recovered inside the stolen vehicle. Opp'n 2. Defendant's phone reflected a text conversation between defendant and his codefendant immediately before the carjacking in which the two coordinated defendant's arrival to the scene of the carjacking. Opp'n 2. Moreover, the timing of the text conversations is consistent with defendant's arrival to the scene of the carjacking as captured on video footage. *See* Opp'n 2.

Although the Court reaches no conclusions about the merits of the Government's ultimate case, this factor also weighs in favor of detention. *See United States v. Fama*, No. 14-cr-00234, 2013 WL 2467985, at *3 (S.D.N.Y. June 7, 2013) ("The Court recognizes the difficulty inherent in assessing the Government's case before trial, and is mindful not to reach any conclusions about [the defendant's] guilt or innocence."). Defendant again does not meaningfully dispute that this factor weighs in favor of detention. *See generally* Mot.; *see also* Appeal Tr. 16:1–11. Therefore, the Court agrees with Judge Merkl that "the weight of the evidence as to this case . . . weighs strongly against the defendant's release." Bail Hr'g Tr. 22:8–13.

### C. *History and Characteristics of Defendant*

The Court also considers, as it must, defendant's history and personal characteristics. When assessing a defendant's characteristics, courts "look[] to the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, [and] past conduct." *United States v. Fishenko*, No. 12-cr-00626, 2013 WL 3934174, at *2 (E.D.N.Y. July 30, 2013) (quoting 18 U.S.C. § 3142(g)(3)).

Defendant is 23 years old and was a lifelong resident of New York City before relocating to New Jersey to live near his grandmother. Mot. 4. He has always lived with or near family members. *See* Bail Hr'g Tr. 12:19–23. Defendant asserts that he "has no money to flee or any wherewithal to flee." Bail Hr'g Tr. 12:20–21. Defendant has no prior criminal convictions, Mot. 4, although he has been arrested on at least four occasions, including for a second, similar carjacking five months after the instant charged offense, *see* Opp'n 3. Moreover, some of defendant's arrests occurred "while on some sort of [pretrial] release" from pending municipal court criminal cases. Bail Hr'g Tr. 23:6–7; *see also* Opp'n 3, 6. Additionally, evidence indicates that defendant failed to appear for numerous court appearances in connection with his municipal criminal proceedings. Bail Hr'g Tr. 22:14–22; *see also* Opp'n 3.

Although evidence points in different directions as to this factor, the Court ultimately concurs in Judge Merkl's conclusion that this factor weighs against pretrial release. *See* Bail Hr'g Tr. 23:8–12. Although defendant argues that his past arrests and charges did not ultimately result in convictions, *see* Appeal Tr. 19:6–9, arrests in certain circumstances can weigh against a defendant's release. *See United States v. Gumora*, 454 F. Supp. 3d 280, 290 (S.D.N.Y. 2020). More importantly, some of the arrests occurred

8

while defendant was on pretrial release for prior charges. *See* Bail Hr'g Tr. 23:6–7. To the extent that defendant argues the Court should discount this fact because defendant was "given little [to] no supervision or services[]" by the municipal court, Bail Hr'g Tr. 14:12–13, the Court is unconvinced. As Judge Merkl observed during the bail hearing, "all citizens are under an obligation not to commit crime at all times[,]" irrespective of the degree of supervision, or lack thereof. Bail Hr'g Tr. 23:3–4. And although defendant emphasizes his familial ties, these connections largely bear on his risk of flight, not danger. *See United States v. Cordero*, No. 20-cr-00142, 2020 WL 6579073, at *5 (W.D.N.Y. Nov. 10, 2020) ("However, the economic security defendant['s] . . . relatives could post deters flight, not danger.") (quoting *Ferranti*, 66 F.3d at 543). In other words, defendant's familial and community ties "counterbalance neither his past and present charged violent conduct, nor . . . the weighty charges against him." *United States v. Pollack*, No. 22-cr-00428, slip op. at 7 (E.D.N.Y. Apr. 17, 2023). Therefore, the Court finds that this factor too weighs in favor of detention.

> D. *Nature and Seriousness of the Danger Posed by Defendant's Release*

In determining the dangerousness of a defendant's release, courts consider not only the danger posed to specific individuals, but also "the danger that the defendant might engage in criminal activity to the detriment of the community." *United States v. Madoff*, 586 F. Supp. 2d 240, 253 n.13 (S.D.N.Y. 2009). Courts routinely find that offenses involving firearms pose a danger to the community, and find that this factor weighs against release where the instant offense charged is related to the use of a firearm. *See United States v. Smalls*, No. 20-cr-00126, 2020 WL 1866034, at *1 (S.D.N.Y. Apr. 14, 2020) (affirming magistrate judge's order of detention where there was a "general danger to the community posed by [the defendant's] apparently ready access to firearms");

9

*United States v. Williams*, No. 20-cr-00293, 2020 WL 4719982, at *3 (E.D.N.Y. Aug. 13, 2020) ("[T]he danger of [the] [d]efendant's release is demonstrated through the fact [the] [d]efendant's instant and past offense involved the use of a firearm."). As explained above, defendant not only brandished a firearm in connection with the carjacking, he also used the firearm to hit the victim before stealing the vehicle. *See* Bail Hr'g Tr. 16:5–14; *see also* Opp'n 4–5. Therefore, the Court agrees with Judge Merkl that "defendant's hands-on involvement speaks heavily to factor [four] under [Section] 3142(g)," and weighs against his release. Bail Hr'g Tr. 23:13–17.

Defendant attempts to resist this conclusion by arguing that at least some set of conditions can reasonably assure that he does not pose a danger to the community. Specifically, defendant contends that "electronically monitored home detention[] will reasonably assure . . . the safety of the community[.]" Mot. 4–5. The Court is not persuaded. As the Government pointed out during oral argument, although home detention and electronic monitoring would alert the Court and Pretrial Services should defendant leave his residence, a home detention condition is, in essense, a court order to stay home. *See* Appeal Tr. 23:21–25. And the government has adduced evidence demonstrating that defendant has a consistent pattern of disregarding court orders and directives, including while on pretrial release. *See United States v. Ellison*, No. 18-cr-00005, 2018 WL 1033456, at *4 (W.D.N.Y. Feb. 22, 2018) (explaining that "monitoring while on home detention or home incarceration, even with relatives posting financial security, w[ould] not eliminate the specific danger that the defendant poses to the community[,] . . . [g]iven the extent and nature of the defendant's past disregard of the risks of being imprisoned while committing crimes even though he was under active supervision"); *see also United States v. Gordon*, No. 18-cr-00373, 2020 WL 5905382, at

10

\*2 (S.D.N.Y. Apr. 10, 2020) ("[T]he Court is not convinced that conditioning [the defendant's] release on home detention with 24/7 electronic monitoring would . . . eliminate the risk he poses to his community. [The defendant] has displayed no hesitation in flouting court-imposed conditions in the past."). Accordingly, this factor also weighs in favor of detention.

\* \* \*

In sum, the Court finds that the Section 3142(g) factors weigh in favor of defendant's continued detention and pretrial release is not warranted.[5] The Court does not doubt the sincerity of defendant's family members and friends who support him and

---

[5] None of the cases defendant lists in his supplemental authority letter alters the Court's conclusion. *See* Suppl. Auth. Letter. Indeed, these cases underscore why the Section 3142(g) factors weigh in favor of detention here. For one, as the Government points out in its response, the relevant inquiry under the Bail Reform Act is not simply the nature of the "specific statutes at issue," but rather the facts relevant to the underlying offense. Suppl. Resp. 1. And the underlying facts in defendant's cited cases are readily distinguishable in that (1) the defendants granted bail in those cases did not directly participate in the robbery itself, *see United States v. Hoover*, No. 23-cr-00043, Compl. ¶ 2, ECF No. 1 (alleging that the defendant released on bail "acted as a look-out . . . while the robbery took place"); *United States v. Rutledge*, No. 23-cr-00269, Compl. ¶ 3, ECF No. 1 (alleging that the defendant released on bail "was the getaway driver"); or (2) to the extent that they did, those defendants apparently did not use violence or actually use a firearm during the commission of the offense, *see United States v. Anderson*, No. 22-cr-00428, Sentencing Memo. 3, ECF No. 127 ("Unlike his two codefendants, [the released defendant] did not possess or brandish a firearm. Nor did he physically threaten [the victims] or use physical force when taking their jewelry."); *United States v. White*, No. 17-cr-00286, Compl. ¶ 2, ECF No. 1 (alleging that the defendant released on bail "carried [a] handgun[]," but indicating that another, unidentified individual "brandished a handgun"); *United States v. Mack et al.*, No. 22-cr-00166, Compl. ¶ 2, ECF No. 1 (indicating that one of the defendants released on bail "acted as a lookout[]" while another defendant released on bail "displayed [a] handgun"). Moreover, certain of defendant's cited cases are also distinguishable in that, unlike here, Pretrial Services recommended that the defendant be released on bail. *See United States v. Pagan*, No. 22-cr-00500, Tr. of Criminal Cause for Arraignment 19:22–20:1, ECF No. 9 ("[A]lthough this is a presumption case[,] . . . in light of Pretrial Services' recommendation, the government will not seek detention here."); *United States v. Raphael*, No. 25-cr-00223, Tr. of Arraignment Hr'g 17:22–23, ECF No. 14 (indicating that Pretrial Services recommended release).

11

are willing to act as sureties for his release. Still, the Court agrees with Judge Merkl that, in light of the evidence supplied by the Government and the totality of the circumstances, the Court is "not reassured that [defendant] would not commit future crimes while on release and that [he] would do everything [he] would need to do under the conditions of release." Bail Hr'g Tr. 23:25–24:3; *see also Pollack*, slip op. at 8 ("While the Court has no reason to doubt the intention of [the] [d]efendant's family and friends who are willing to act as sureties, their influence does not outweigh the danger [the] [d]efendant's . . . release would pose to the community."). Accordingly, because the Government has shown by clear and convincing evidence that no condition or set of conditions can reasonably assure that defendant does not pose a danger to the community, defendant's request to vacate the order of detention must be denied.

## CONCLUSION

For the reasons stated above, defendant's appeal of Judge Merkl's bail determination is denied.

**SO ORDERED.**

                                                  */s/ Natasha C. Merle*
                                                  NATASHA C. MERLE
                                                  United States District Judge

Dated:       January 30, 2026
                Brooklyn, New York